**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

VERSUS

LINDA GURVIN

CRIMINAL ACTION

NO. 23-76-SDD-SDJ

**RULING**

This matter is before the Court on Defendant, Linda Gurvin's ("Gurvin" or "Defendant") Motion to Vacate under 28 U.S.C. § 2255.[1] The United States of America ("the Government") filed an Opposition[2] to this motion. For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

In September 2023, Gurvin was charged by indictment with three counts of wire fraud (Counts 1–3), in violation of 18 U.S.C. § 1343, and two counts of unlawful monetary transactions (Counts 4–5), in violation of 18 U.S.C. § 1957.[3] These charges arose out of a scheme to defraud the United States, in 2020 and 2021, through the Economic Injury Disaster Loan ("EIDL") program and the Paycheck Protection Program ("PPP").[4] These pandemic-related programs were expanded and/or authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act near the start of the COVID-19 pandemic,

[1] Rec. Docs. 55, 63. Although Gurvin filed two motions, both documents seek essentially the same relief, and the Court will refer to the documents herein as a singular motion.
[2] Rec. Doc. 73.
[3] Rec. Doc. 1.
[4] *Id.*; Rec. Doc. 30, pp. 4–8.

to assist small businesses and other eligible entities suffering pandemic-related adverse impacts.[5]

In commission of the offenses, Gurvin submitted six fraudulent applications in the names of businesses and entities she purportedly owned and operated and made additional fraudulent statements in connection with a seventh application, filed in the name of a business owned by one of Gurvin's relatives.[6] Some applications were for businesses that existed but already closed prior to the start of the pandemic, while others were for new entities Gurvin created after the start of the pandemic solely for the purposes of her scheme.[7] One included a purported non-profit entity for homeless veterans and an entity Gurvin claimed to be a non-profit church.[8] Gurvin's total intended loss was more than one million dollars and created an actual loss of nearly $500,000.[9]

As Gurvin obtained the illegal funds, she made frequent transactions moving the funds among her accounts and eventually used the funds for personal expenses and purchases.[10] Gurvin also used the funds to purchase a cashier's check she ultimately used to make a down payment on a 2020 Range Rover.[11] Gurvin's indictment included a notice of forfeiture, and a subsequently-filed bill of particulars specifically identified the Range Rover as being subject to forfeiture.[12]

On December 12, 2023, Gurvin pled guilty, pursuant to a Plea Agreement with the Government, to Counts 1 (wire fraud) and 4 (unlawful monetary transactions), in

---

[5] *Id.* at pp. 2–4; Rec. Doc. 30, pp. 4–5.
[6] Rec. Doc. 23, pp. 6–8; Rec. Doc. 30, pp. 5–8.
[7] *Id.* at pp. 6–7; Rec. Doc. 30, p. 5.
[8] *Id*. at p. 7; Doc. 30, p. 5.
[9] Rec. Doc. 30, pp. 7–8; Rec. Doc. 34.
[10] Rec. Doc. 23, p. 8; Rec. Doc. 30, pp. 7–8.
[11] Rec. Doc. 1, pp. 8–9; Rec. Doc. 23, p. 8; Rec. Doc. 30, pp. 7–8.
[12] Rec. Docs. 1, 19.

exchange for dismissal of the remaining counts.[13] The Court performed its usual colloquy and confirmed at the very beginning that Gurvin understood the nature of the charges, the maximum penalties, and the consequences of pleading guilty.[14] The Court also fully explained the rights Gurvin was waiving by pleading guilty, and Gurvin stated under oath that she understood all those rights and confirmed that she wished to plead guilty.[15] Gurvin authenticated the signed Plea Agreement and confirmed that she had read it carefully and had a full opportunity to ask all questions of her attorney before signing the agreement.[16]

Particularly relevant to the claims asserted in the pending motion, the Plea Agreement included agreements regarding both restitution and forfeiture. Specifically, as to restitution, Gurvin and the Government agreed,

> pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall not be limited to the counts of conviction for purposes of ordering restitution. Specifically, as a condition of this plea agreement, the defendant agrees that the Court will order full restitution for all loss caused by the defendant's scheme, as described in the Indictment and/or in the Factual Basis (below), in an amount to be determined by the Court at or prior to sentencing.[17]

Regarding forfeiture, Gurvin specifically agreed to:

> the forfeiture of a 2020 Land Rover, model Range Rover MP, white in color, bearing Vehicle Identification Number (VIN) SALGS2SE4LA402849 (the "Vehicle") to the United States, and agrees to forfeit her full interest, title, and claim to the Vehicle. The defendant also agrees not to file a claim or petition seeking remission or contesting the forfeiture of the Vehicle in any administrative or judicial (civil or criminal) proceeding.[18]

---

[13] Rec. Docs. 20, 22, 23.
[14] Rec. Doc. 49, pp. 5–7, 13–14, 21–23.
[15] *Id.* at pp. 7–9, 13–14, 23.
[16] *Id.* at pp. 9–11, 20.
[17] Rec. Doc. 23, pp. 3–4.
[18] *Id.* at p. 4.

With the exception of the Government's agreement to credit the net proceeds from the sale of the Range Rover to any forfeiture money judgment ordered by the Court, Gurvin fully understood "that forfeiture of her property [would] not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon her as part of [her] sentence."[19] At her re-arraignment, the Court specifically reviewed these provisions and confirmed Gurvin's understanding.[20]

The Plea Agreement also included a detailed factual basis that informed the Court's restitution order and served as a credible and reliable basis for the United States Probation Office in preparing Gurvin's Presentence Investigation Report ("PSR").[21] Critically, Gurvin stipulated to the fact that she used fraudulent proceeds to make the down payment on her 2020 Range Rover.[22] This factual basis was read into the record at Gurvin's re-arraignment, and she subsequently confirmed, under oath, that the stipulated factual basis was true and correct; that she carefully considered and read the Plea Agreement and consulted with her attorney before signing it; and that she entered into the Plea Agreement absent any threats or coercion.[23] The Court accepted Gurvin's guilty pleas, finding that she entered them "knowingly and voluntarily" and that she "received effective assistance of counsel."[24]

The PSR and Addendum to the PSR later disclosed that the total restitution amount due to the Small Business Administration was $496,673.78.[25] Neither party filed

[19] *Id*. at p. 5.
[20] Rec. Doc. 49, pp. 12–13.
[21] Rec. Doc. 23, p. 8; see also Doc. 30, pp. 7–8.
[22] *Id*.; *see also* Rec. Doc. 30, pp. 7-8.
[23] Rec. Doc. 49, pp. 2–3, 19–20.
[24] *Id.* at p. 24; *see also id*. at pp. 3–4.
[25] Rec. Doc. 34.

any objections to the PSR.[26] Before sentencing, the Court entered a final order of forfeiture as to the 2020 Range Rover.[27] Thus, subject to this Order, and in accordance with the terms of the Plea Agreement, Gurvin's Range Rover was lawfully forfeited to the Government.[28]

Gurvin appeared for sentencing on May 2, 2024.[29] The Parties confirmed there were no objections, corrections, or alterations to the PSR.[30] When given the opportunity to allocute, Gurvin stated: "I just want to say that I'm truly sorry for the mistake I made and the harm that I have caused, and I know the error of my ways. And it will not happen again."[31] Gurvin's attorney addressed the Court and asked the Court to consider a below guidelines sentence.[32] The Court took several factors into consideration and ultimately imposed a "modest variance sentence" based on Gurvin's status as "a 56-year-old with a nonviolent history and a nonviolent offense who performed well on supervision and accepted responsibility immediately."[33] The Court imposed a downward variant sentence of 36 months, followed by three years of supervised release;[34] ordered full restitution in the amount of $496,673.78 to the Small Business Administration;[35] and ordered a forfeiture money judgment in the amount of $447,600 and confirmed the forfeiture of Gurvin's 2020 Range Rover.[36]

---

[26] *Id.*
[27] Rec. Doc. 36.
[28] *Id.*; Rec. Doc. 23, pp. 4-5.
[29] Rec. Doc. 38.
[30] Rec. Doc. 51, p. 3.
[31] *Id.* at pp. 4-5.
[32] *Id.* at p. 5.
[33] *Id.* at pp. 6-9.
[34] Rec. Doc. 51, p. 10; *see also* Rec. Docs. 40, 42.
[35] *Id.* at p. 12.
[36] *Id.*

Notwithstanding the waivers in her Plea Agreement, Gurvin filed an appeal on May 6, 2024.[37] Gurvin's appellate counsel filed an *Anders* brief representing that the appeal presented no legally non-frivolous questions, to which Gurvin filed a *pro se* response.[38] The Fifth Circuit declined to consider Gurvin's ineffective assistance of counsel claim without prejudice to collateral review, but as to all other claims, the Fifth Circuit agreed with Gurvin's appellate counsel and dismissed her appeal as frivolous.[39] While her appeal was still pending, Gurvin began filing the motions at issue herein.[40] She complains primarily that she received ineffective assistance of counsel related to both the restitution ordered and the forfeiture of the Range Rover. The Government opposes the motion.

## II. ARGUMENTS

In her initial filing, Gurvin claims her attorney's ineffective assistance "resulted in [her] entering a plea agreement without fully understanding the ramification[s]," i.e., the fact that her vehicle would be forfeited and that she would be "obligated to repay the funds associated with the EIDL and PPP loans in full, despite having forfeited [her] vehicle."[41] Gurvin argues that her "attorney failed to adequately explain the terms of the plea deal, the potential consequences of pleading guilty, and the impact it would have on [her] financial situation[.]"[42] Without any evidentiary basis or support, Gurvin also alleges that her attorney failed to disclose unspecified "important information regarding the possibility

[37] Rec. Doc. 43.
[38] *See* Doc. 71, p. 3.
[39] *Id.* at pp. 3-4.
[40] Although Gurvin's motions were premature and subject to dismissal because they were filed while her appeal remained pending, the Court granted the Government's request to respond to the motions following the Fifth Circuit's mandate (Rec. Docs. 61, 62) and will consider the motions timely filed and properly before the Court.
[41] Rec. Doc. 55, p. 1.
[42] *Id.*

of contesting the charges or seeking a more favorable outcome," and she claims that, had she known that she "had viable options," she "would not have accepted the 36 month plea deal that included the forfeiture of [her] vehicle."[43] Also lacking any evidentiary basis or support, Gurvin vaguely argues that "the calculations were wrong[,] which in turn cost (sic) [her] sentence to be higher."[44] Accordingly, Gurvin seeks to vacate her plea and have her Range Rover returned.[45]

A few weeks later, Gurvin filed another Section 2255 motion, asserting essentially the same claims but stating further that she "was ordered/forced by [her] lawyer and the prosecutor to turn in [her] 2020 Range Rover" while also being "ordered to pay back every penny [she] received."[46] She claims she "was not advised correctly and [she] pleaded to something that [she] did not agree with" without "knowing about [her] rights and laws[.]"[47] Gurvin contends her attorney failed to make things "crystal clear" to her and that she "only learned about things after the fact" – what "things" she references are not specified.[48] Gurvin also claims her attorney and the prosecutor were "in cahoots," and she claims the prosecutor "specifically stated that he wanted to make an example out of [her] and he put this bug in the judge[']s ear."[49] Gurvin believes she "was railroaded like so many others and it's not fair, just or right."[50]

The Government points to the many sworn statements and responses made by Gurvin under oath and on the record that undermine every single claim above. The

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] Rec. Doc. 63, p. 4.
[47] *Id.*
[48] *Id.*
[49] *Id.* There is absolutely no evidence in the record or otherwise to substantiate this outrageous accusation.
[50] *Id.*

Government details the Court's Rule 11 colloquy with Gurvin, which demonstrates that her plea was entered knowingly, voluntarily, and with the effective assistance of counsel. The Government also shows that the record undermines Gurvin's challenges regarding the restitution and forfeiture of the Range Rover, pointing to both documents and portions of the hearing where the Court explained exactly what Gurvin was agreeing to in the Plea Agreement. The Government also contends Gurvin fails to meet the "rigorous standard" of *Strickland* to show that her counsel's assistance was constitutionally deficient or that she was actually prejudiced by any purported deficiency.

## III. LAW AND ANALYSIS

### A. Relief Under Section 2255

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such a sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." Relief under Section 2255 is limited to "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[51]

The district court must conduct a preliminary review when a Section 2255 motion is filed.[52] "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."[53] Next, a court must hold an evidentiary hearing "unless the motion and the files

---

[51] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[52] *United States v. Hutton*, No.16-184, 2020 WL 5517332, at *2 (E.D. La. Sep. 14, 2020).
[53] Rules Governing § 2255 Proceedings, Rule 4(b).

and records of the case conclusively show that the prisoner is entitled to no relief."[54] An evidentiary hearing is required if the prisoner produces any "independent indicia of the likely merit of [his] allegations."[55]

Further, an issue raised for the first time in a Section 2255 motion will only be considered if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged error.[56] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[57]

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney and are provided a liberal construction.[58] Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."[59] Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition ... to be of probative evidentiary value."[60]

The Court finds that no hearing is required here because the record conclusively demonstrates that Gurvin is not entitled to the relief sought.

### B. Ineffective Assistance of Counsel

*Strickland v. Washington* articulates the standard for these claims.[61] In *Strickland*,

---

[54] 28 U.S.C. § 2255(b).
[55] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[56] *United States v. Frady*, 456 U.S. 152,167-68 (1982).
[57] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[58] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).
[59] *Pineda*, 988 F.2d 22 at 23 (5th Cir. 1993)(citing *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989)).
[60] *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).
[61] *Strickland v. Washington*, 466 U.S. 668 (1984).

the Supreme Court held that, to obtain relief, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.[62] A deficient performance is one in which the attorney's actions were unreasonable under prevailing professional norms.[63] A defendant must prove both prongs to succeed in an ineffective assistance of counsel claim.[64]

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[65] "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."[66] In analyzing counsel's performance, a reviewing court must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.[67] The reviewing court must "judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[68] Furthermore, a petitioner must overcome a strong presumption that defense counsel's conduct falls within a wide range of reasonable representation.[69] "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[70] "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

---

[62] *Id.* at 687.
[63] *Id*. at 688.
[64] *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).
[65] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[66] *Strickland*, 466 U.S. at 688.
[67] *Id*. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).
[68] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)(quoting *Strickland*, 466 U.S. at 690).
[69] *Harrington v. Richter*, 562 U.S. 86, 104 (citing *Strickland*, 466 U.S. at 689).
[70] *Bell v. Cone*, 535 U.S. 685, 702 (citing *Strickland*, 466 U.S. at 689).

evaluate the conduct from counsel's perspective at the time."[71] With these principles in mind, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.[72]

Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.[73] A reasonable probability is one that is sufficient to undermine confidence in the outcome.[74] Furthermore, "[t]he petitioner must 'affirmatively prove,' not just allege, prejudice."[75] This standard requires a "substantial," not just "conceivable," likelihood of a different result.[76] In making this determination as to prejudice, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[77] Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.[78]

1. Knowing, Voluntary Guilty Plea and Waivers

As set forth above, Gurvin claims her guilty plea and waiver of appeal rights were not knowing and voluntary because she was "forced" into the Plea Agreement, and her attorney failed to explain the law, her rights, and her "viable options."[79] Thus, to determine

[71] *Strickland*, 466 U.S. at 689.
[72] *Id.*; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)(counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'")(quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).
[73] *See United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998).
[74] *Strickland*, 466 U.S. at 694.
[75] *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693).
[76] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).
[77] *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).
[78] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)(citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).
[79] *See, generally* Rec. Docs. 55, 63.

whether Gurvin received effective assistance of counsel, the Court must evaluate whether Gurvin's guilty plea and waiver of rights were knowing and voluntary.

"[A] defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary."[80] "A defendant knowingly and voluntarily enters a waiver when the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it."[81]

"When a petition does not allege, and the record contains no indication that ratification of the plea agreement was not 'voluntary' or knowledgeable, the Court will hold the defendant to the bargain that he made-the Court need not presume that the waiver was ineffective."[82] Additionally, "when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."[83] As the Supreme Court has stated, "[s]olemn declarations in open court carry a strong presumption of verity."[84]

Nevertheless, guilty pleas must be "voluntary," with attendant waivers having been made "'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant

---

[80] *United States v. Potter*, No. 13-141, 2015 WL 3486446, at *1 (E.D. La. June 1, 2015) (Feldman, J.).
[81] *Id.* (citing *United States v. Ruiz*, 536 U.S. 622, 630 (2002)).
[82] *United States v. Potter*, No. 13-141, 2015 WL 3486446, *1-2 (E.D. La. June 1, 2015)(citing *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005)(citing *McKinney*, 406 F.3d at 746).
[83] *United States v. Portillo*, 18 F.3d 290, 292–93 (5th Cir.1994); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *Bond*, 414 F.3d at 544.
[84] *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

circumstances and likely consequences.'"[85] A plea is knowing and intelligent when the defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."[86] In determining whether a plea is knowing and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect."[87] In *Boykin v. Alabama*,[88] the Supreme Court held that courts must hold a hearing prior to the entry of a guilty plea, and the court must elicit an affirmative showing that the decision to plead guilty was voluntarily and intelligently made.[89] Rule 11 of the Federal Rules of Criminal Procedure sets forth procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly by requiring "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[90] "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them."[91]

Determining whether a defendant understands the consequences of a guilty plea, including the waiver of the right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the court must only

---

[85] *United States v. Ruiz*, 536 U.S. 622, 629 (2002)(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).
[86] *Bousley v. United States*, 523 U.S. 614, 628 (1998).
[87] *Taylor v. Whitney*, 933 F.2d 325, 329 (5th Cir.1991).
[88] 395 U.S. 238 (1969).
[89] *Matthew v. Johnson*, 201 F.3d 353, 368 n. 22 (5th Cir. 2000).
[90] *United States v. Vonn*, 535 U.S. 55, 62 (2002).
[91] *Id*. at 78 (Stevens, J., concurring).

ascertain whether the defendant has a realistic or reasonable understanding of the plea.[92] A court's adherence to the colloquy required by Rule 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea."[93] "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [the defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequences."[94]

In considering the pending motion, the Court listened to the audio recording of Gurvin's re-arraignment hearing on December 12, 2023 and reviewed the transcript of same. At the beginning of the hearing, Gurvin was sworn and warned about the consequences of perjury. The Court then painstakingly proceeded through the Rule 11 colloquy, ensuring that Gurvin understood the nature of the charges, the maximum penalties, and the consequences of pleading guilty.[95] The Court fully explained the rights Gurvin was waiving by pleading guilty, confirmed Gurvin's understanding of those rights, and confirmed that it was Gurvin's intent to plead guilty.[96] The Court repeatedly inquired whether Gurvin was satisfied with her attorney, whether she went over the Plea Agreement with him, had the opportunity to ask any questions, and whether he provided sound advice and answered her questions – all these questions were answered in the affirmative.[97] Gurvin also explicitly confirmed, under oath, that she was not induced into

---

[92] *See United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir.1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").
[93] *Id.* at 627.
[94] *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir.1990).
[95] Rec. Doc. 49, pp. 4-7, 13-14, 21-23.
[96] *Id.* at pp. 7–9, 13–14, 23.
[97] *Id.* at pp. 3-5, 10, 20.

the Plea Agreement by any threats or coercion.[98]

Specific to the challenges raised by Gurvin, the Plea Agreement included agreements regarding both restitution and forfeiture. As to restitution, Gurvin and the Government agreed that the Court would not be limited to the counts of conviction, and Gurvin specifically agreed that the Court would "order full restitution for all loss caused by [her] scheme[.]"[99] Regarding forfeiture, Gurvin agreed to the full extent of lawful forfeiture, to specifically include her 2020 Range Rover.[100] During the re-arraignment, in addition to the above sworn assurances, the Court expressly reviewed these and other forfeiture and restitution provisions and confirmed Gurvin's understanding.[101] The exchange between the Court and Gurvin could not have been clearer: "Forfeiture will not be treated as the satisfaction of any restitution. To the extent that there's an order of forfeiture in this case and that you forfeit any proceeds that you've derived or gained from the commission of the offenses, that forfeiture will not go against the restitution or won't satisfy the restitution. Do you understand?"[102] Gurvin answered "yes."[103]

As the Government notes, Gurvin does not allege any legal infirmity in these provisions; rather, she now simply believes it is "not fair" that she must "pay back every penny [she] received" *and* turn over her Range Rover.[104] Despite being awarded three points for acceptance of responsibility,[105] and acknowledging that all of the facts set forth in the stipulated factual basis were "true and correct,"[106] Gurvin now appears to blame

---

[98] *Id.* at p. 9, 20.
[99] Rec. Doc. 23, pp. 3–4.
[100] *Id.* at p. 4.
[101] Rec. Doc. 49, pp. 12–13.
[102] *Id.* at pp. 12-13.
[103] *Id.* at p. 13.
[104] Rec. Doc. 63, p. 4; *see also* Rec. Doc. 55, p. 1.
[105] Rec. Doc. 30, p. 11.
[106] Rec. Doc. 49, p. 19.

everyone for her conduct – her attorney, the Government, the prosecutor, and the Court – but herself.

Moreover, many of the same characteristics the Court observed in Gurvin that informed a downward variance now work against her feigned ignorance. While the Court acknowledged that Gurvin's scheme was not "complicated," the Court noted that it involved "a broad use of different corporate entities in which to perpetuate the fraud."[107] Indeed, "Gurvin submitted loan applications or grant applications under various CARES Act programs requesting over a million dollars in funds that she wasn't entitled to and that she lied about."[108] The Court observed of Gurvin:

> You don't have any substance abuse problems or history. You have a master's degree. You're highly educated. You have been gainfully employed. In fact, retired from the East Baton Rouge Parish school system. All in all, I mean, you're a bright, capable woman who, no doubt, has contributed to your society as – to your community and your society, as indicated by the letters, but it's not a one-off. I mean, it's not a momentary lapse in judgment. It was a continued effort.[109]

The record demonstrates that Gurvin is sufficiently educated and sophisticated to have understood the terms of the Plea Agreement, including her restitution and forfeiture obligations. Applying the foregoing jurisprudence, Gurvin's "[s]olemn declarations in open court carry a strong presumption of verity."[110] Indeed, the Fifth Circuit has held that a "signed … unambiguous plea agreement … is accorded great evidentiary weight."[111] Further, as the Fifth Circuit expressed in *United States v. Cothran*, "we give the statements during the [Rule 11] colloquy greater weight than we give unsupported, after-the-fact, self-

[107] Rec. Doc. 51, p. 8.
[108] *Id.*
[109] *Id.* at pp. 8-9.
[110] *Blackledge*, 431 U.S. at 73–74.
[111] *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

serving revisions."[112] Gurvin has presented no countervailing evidence to undermine the voluntariness of her plea; her conclusory, after-the-fact assertions bear no evidentiary weight. Gurvin's claim that her guilty plea was involuntary, uninformed, or coerced is unsupported by any competent evidence and is entirely without merit. Gurvin's dissatisfaction with the known consequences of her criminal conduct do not warrant Section 2255 relief, and her Motion is DENIED.

2. Requirements of Error and Prejudice under *Strickland*[113]

As discussed above, Gurvin has failed to demonstrate any error committed by her counsel, and she has likewise failed to demonstrate prejudice from any such error – "that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial."[114] Gurvin claims her attorney "failed to adequately explain the terms of the plea deal [and] the potential consequences of pleading guilty," but she does not state how or what information was missing that would have altered her decision.[115] Further, even if her attorney had failed to explain these consequences, the record cited above reflects that the Court explained these consequences in full. Gurvin vaguely references "things" and "important information" she learned "after the fact,"[116] but again fails to specify what this information is and how it would have changed Gurvin's decision to plead guilty.

Gurvin inexplicably contends that, had she known that she "had viable options," she "would not have accepted the 36 month plea deal that included the forfeiture of [her]

[112] 302 F.3d 279, 284 (5th Cir. 2002).
[113] Because Gurvin has failed to demonstrate any error by counsel, the Court need not address prejudice; however, the Court notes that Gurvin has likewise failed to present any evidence of prejudice in this matter.
[114] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[115] Rec. Doc. 55, p. 1.
[116] Rec. Doc. 63, p. 4.

vehicle."[117] Gurvin fails to identify what "viable options" were hidden from her; moreover, at her re-arraignment hearing, the Court explained in detail the very viable option of going to trial.[118] Gurvin also mischaracterizes her Plea Agreement as a "36 month plea deal" – as was explained to Gurvin at the re-arraignment, the Plea Agreement contained no agreement as to sentencing: "The first thing I want you to understand is that the sentence the court imposes may be different from any prediction your attorney has given you."[119] The Court advised Gurvin that the PSR would "give the Court information" that would inform the Court's calculation of her sentencing guidelines range, but the Court also advised Gurvin that "the Court does not have to sentence you within that recommended range. The Court can go up or down from that range, depending on a number of characteristics and circumstances that the law allows the Court to look at[.]"[120] And the Court did just that – the Court imposed a downward variant sentence, giving Gurvin a *lesser* sentence than called for by the sentencing guidelines.[121] This is also why Gurvin's spurious assertion that "the calculations were wrong," is entirely unsupported and without any legal basis.

Accordingly, Gurvin has failed to carry her burden under *Strickland*, and her Motion is denied as to the claim of ineffective assistance of counsel.

## IV. NO CERTIFICATE OF APPEALABILITY

The record demonstrates that Gurvin's claims are frivolous, and no evidentiary hearing is warranted. Further, the Court finds that Gurvin is not entitled to a certificate of

---

[117] Rec. Doc. 55, p. 1.
[118] *See, generally* Rec. Doc. 49.
[119] Rec. Doc. 49, p. 21.
[120] *Id.* at pp. 22-23.
[121] Rec. Doc. 51, pp. 9-11.

appealability. An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2255 "unless a circuit justice or judge issues a certificate of appealability."[122] A certificate of appealability may issue only if a § 2255 petitioner has made a substantial showing of the denial of a constitutional right.[123]

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of h[er] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[124] In the instant case, the Court finds that reasonable jurists would not debate the denial of Gurvin's motion.

## V. CONCLUSION

For the reasons above, Gurvin's Motion to Vacate[125] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of September, 2026.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[122] 28 U.S.C. § 2253(c)(1)(B).
[123] 28 U.S.C. § 2253(c)(2).
[124] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005)(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).
[125] Rec. Docs. 55, 63.